## Commonwealth ex rel. v. Burke, Warden

*Russell E. Brough*, petitioner, pp.

KNIGHT, P. J., December 3, 1948.—Relator, Russell E. Brough, pleaded guilty to bill 145, June sessions, 1938, in the Court of Oyer and Terminer and General Jail Delivery of Montgomery County, charging him with malicious injury to railroads (Criminal Code of March 31, 1860, P. L. 382, sec. 142), which has a maximum penalty of 10 years' imprisonment.

Relator, at his own request, was sentenced September 9, 1938, to the Pennsylvania Industrial School at Huntingdon. He was paroled by the board of trustees of Huntingdon on November 7, 1939.

While on parole he was convicted of involuntary manslaughter, and sentenced to imprisonment in the Philadelphia County Prison for 18 months. At the expiration of this sentence he was returned to the Eastern State Penitentiary as a parole violator on March 26, 1942. He remained under the jurisdiction of the board of trustees of Huntingdon, but his removal to the penitentiary was with the approval of the Department of Welfare of Pennsylvania.

At that time the expiration of his maximum term was fixed at January 28, 1951, and the board of trustees allowed no credit for the time he was out on parole. On November 29, 1943, he was reparoled by the Pennsylvania Board of Parole.

On December 6, 1945, he pleaded guilty in the court of quarter sessions of this county to operating a motor vehicle while under the influence of intoxicating liquor, and was sentenced to imprisonment for 30 days in the Montgomery County Prison. After serving his sentence, he was again returned to the penitentiary as a parole violator, and the expiration of his maximum time was fixed as March 9, 1953. Again he was allowed no credit for the time he was on parole and not delinquent.

On May 20, 1947, he was reparoled by the Pennsylvania Board of Parole, but was recalled October 6, 1947, for a technical violation of parole.

On this last commitment his time on parole from May 20, 1947, to October 6, 1947, was not cancelled, so that the maximum of his original sentence to the Pennsylvania Industrial School at Huntingdon expires according to the records of the Pennsylvania Board of Parole on March 9, 1953.

These are the facts, and on these facts and the applicable law relator contends that he is entitled to a credit on his sentence for the time he was on parole and not delinquent. He contends that he is entitled to a credit of three years, six months and thirteen days, which has not been allowed him.

The question before us is whether relator is entitled to credit on his original sentence for the periods that he was on parole between the times he became delinquent because of new crimes committed.

If relator had been originally sentenced to the Eastern State Penitentiary under the Probation Act of June 19, 1911, P. L. 1055, for an indefinite term, the answer would be easy. That act provides that all sentences to a penitentiary shall be for an indefinite term with the minimum and maximum limits thereof, and section 10 of the act provides that if a convict is released on parole and be convicted of any other crime punishable by imprisonment, he shall be required to serve the maximum term for which he was originally sentenced, without commutation.

This has been construed to mean that the convict is not entitled to receive credit for the time he was on parole before he became delinquent: Commonwealth ex rel. Meinzer v. Smith, 118 Pa. Superior Ct. 250 (1935) ; Commonwealth ex rel. Kent v. Smith, 323 Pa. 89 (1936) ; Kinsella v. Board of Trustees et al., 340 Pa. 497 (1941).

The Act of June 19, 1911, supra, as amended, applies only to sentences to a penitentiary, and the sentence under which the relator is now imprisoned was not to a penitentiary but to the Pennsylvania Industrial Reformatory at Huntingdon. We must therefore look to the acts which apply to this institution for an answer to the question now before us.

Section 6 of the Act of April 28, 1887, P. L. 63, 61 PS §485, provides:

"Every sentence to the reformatory, of a person hereafter convicted of a felony or other crime, shall be a general sentence to imprisonment in the Pennsylvania Industrial Reformatory at Huntingdon, and the courts of this Commonwealth imposing such sentence shall not fix or limit the duration thereof. The term of such imprisonment of any person so convicted and sentenced shall be terminated by the board of managers (now trustees) of the reformatory, as authorized by this act; but such imprisonment shall not exceed the maximum term, provided by law, for the crime for which the prisoner was convicted and sentenced."

The crime for which relator was convicted and sentenced to Huntingdon was malicious injury to railroads, and the maximum sentence for this crime was 10 years. The board of trustees of Huntingdon could therefore have in their discretion retained relator in that institution for 10 years.

The Act of April 28, 1887, supra, was supplemented by the Act of June 6, 1893, P. L. 326, sec. 4, 61 PS §523. This act provides:

"Whenever any paroled inmate of the said Industrial Reformatory shall violate his parole and be returned to the institution, the time when he was on parole may, in the discretion of the Board of Managers, be added to the maximum sentence which he could be required to serve, and in their discretion, the said paroled inmate may be compelled to serve, in addition to the maximum sentence, a period of time equal to the time that he was on parole."

The provision, that the board of trustees may in their discretion add to the prisoner's maximum sentence the time he was on parole before he became delinquent, is just another way of saying that he could be denied a credit for the time he was on parole.

The Parole Act of August 6, 1941, P. L. 861, created the Pennsylvania Board of Parole. Section 17 of the act, 61 PS §331.17, provides inter alia:

"The Board shall have exclusive power to parole and reparole, commit and recommit for violations of parole, and to discharge from parole all persons heretofore or hereafter sentenced by any court in this Commonwealth to imprisonment in any prison or penal institution thereof, whether the same be a state or county penitentiary, prison or penal institution, as hereinafter provided."

The discretionary powers to parole and to recommit for violations thereof, formerly vested in the board of managers of Huntingdon, were transferred to the Pennsylvania Board of Parole. It follows that if the board of trustees of Huntingdon had discretionary power to deny a credit to the relator for time spent on parole between his acts of delinquency, the State Board of Parole had the same authority.

Section 10 of the Act of April 28, 1887, supra, gives the board of trustees power to transfer certain prisoners from the Huntingdon institution to a State prison.

In passing we may note that the Act of June 6, 1893, P. L. 328, provides that notice of an application for a writ of habeas corpus for the discharge of a prisoner from a State penitentiary must be given to the authority or authorities that committed the inmate to the penitentiary, and that it shall not be lawful for any court or judge to discharge an inmate without proof that such notice has been given.

No such proof was furnished in this case, but in view of the disposition we are making of this writ, we will overlook this failure to observe the Act of June 6, 1893, P. L. 328.

We have not attempted to review the different actions of the Board of Parole to ascertain if the date

fixed by this body as to the expiration date of relator's maximum sentence is correct. What we do decide is that relator is not entitled to receive credit for the time he was on parole and not delinquent, which credit was refused him by the board of trustees of Huntingdon and the Board of Parole.

It follows that relator is not illegally deprived of his liberty, and the writ must be discharged.

And now, December 3, 1948, the writ of habeas corpus is discharged.